O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| YOLANDA RUIZ DE RIVERA, | Case No. CV 15-04625-DFM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Yolanda Ruiz De Rivera ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her applications for Social Security disability benefits. On appeal, the Court concludes that the ALJ met its burden at step five of the sequential process. The ALJ's decision is therefore affirmed and the matter is dismissed with prejudice.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance and supplemental security income benefits on March 20, 2012, alleging disability beginning December 16, 2006. Administrative Record ("AR") 120-23, 124-29. After Plaintiff's applications were denied at the initial stage, an administrative

hearing was held at which Plaintiff, represented by counsel, appeared and testified. AR 24-44. On December 9, 2011, the ALJ issued an unfavorable decision. AR 9-27. The Appeals Council denied Plaintiff's request for review on August 9, 2013. AR 2-7. This Court remanded the matter for further proceedings after finding that the ALJ was required to call upon a vocational expert ("VE") because Plaintiff suffered from nonexertional limitations not contemplated by the Medical-Vocational Guidelines. AR 794-98. On remand, the ALJ held a second hearing and issued a second unfavorable decision on March 26, 2015. AR 715-32.

In reaching this decision, the ALJ found that Plaintiff had the severe impairments of status post left (nondominant) lateral epicondyle and radial tunnel release, status post secondary surgery for left radial nerve compression of the left upper extremity, and depressive disorder, N.O.S., with anxiety. AR 723. But the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any listed impairments. AR 724. The ALJ also found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work with several additional limitations. AR 725-30. After concluding that Plaintiff was unable to perform her past relevant work as an assembly worker, the ALJ concluded that Plaintiff was not disabled because Plaintiff was capable of working as a bakery worker or scaling machine operator despite her impairments. AR 730-31.

## II.

## ISSUES PRESENTED

The parties dispute whether the ALJ carried the administration's burden at step five of the sequential evaluation process. Joint Stipulation ("JS") at 5.

## III.

## THE ALJ MET THE ADMINISTRATION'S BURDEN AT STEP FIVE

Plaintiff contends (1) that the VE's testimony does not provide

substantial evidence supporting the ALJ's finding that Plaintiff is capable of performing in the represented occupations despite her illiteracy and (2) that the ALJ's identification of the number of jobs available in the regional and national economies does not demonstrate that the occupations exist in significant numbers. See JS at 6-12

**A.    Plaintiff's Illiteracy in English**

The ALJ found that Plaintiff was not able to communicate in English and was considered in the same way as an individual who is illiterate in English. AR 730. Plaintiff contends that the ALJ failed to resolve conflicts between the VE's testimony and the DOT regarding Plaintiff's ability to perform in the represented occupations. Plaintiff argues that even the lowest DOT language requirement necessitates some language ability and therefore the VE's testimony clearly deviated from the DOT. JS at 6-9.

At step five, the agency bears the burden of showing that a claimant can perform work that exists in "significant numbers" in the regional or national economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1098, 1100 (9th Cir. 1999). A VE's testimony may be sufficient to carry that burden; however, the expert's opinion must reflect all limitations the ALJ includes in the RFC. Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001). When a VE's testimony conflicts with a DOT job listing, the ALJ "must elicit a reasonable explanation for the conflict before relying on the [expert's] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2 (1985).

However, the ALJ is not required to resolve conflicts when the VE's findings do not deviate from the DOT. See Johnson v. Astrue, No. 12-01580, 2013 WL 3956248, at *12 (N.D. Cal. July 30, 2013). The lowest language requirement possible for occupations listed in the DOT is level one, yet "[a]

3

claimant is not per se disabled if he or she is illiterate." <u>Pinto v. Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2007). Therefore, the DOT does not preclude illiterate individuals from performing level 1 language jobs, otherwise illiterate people would be per se disabled. <u>See</u> <u>Johnson</u>, 2013 WL 3956248, at *12; <u>see also</u> <u>Herrera v. Colvin</u>, No. 13-1734, 2014 WL 3572227, at *10 (C.D. Cal. July 21, 2014) (affirming ALJ's reliance on VE's testimony that an individual who is illiterate or unable to effectively communicate in English could perform level one language jobs despite the DOT language requirement because "the DOT does not specify that language level one skills be in English, so there is no explicit deviation from the DOT"). Therefore, the VE's finding that Plaintiff is capable of performing certain level one language jobs, despite illiteracy, does not inherently conflict with the DOT. <u>See</u> <u>id.</u>

Specific requirements of certain jobs, however, may conflict with a claimant's language limitation. Here, the VE gave an explanation for the conflict between Plaintiff's language limitation and particular job requirements. During cross-examination by Plaintiff's counsel, the VE testified as follows:

Q      Now the language level for these occupations. What does it say in the DOT?

A      It's the lowest one.

Q      It's an R-1?

A      One.

Q      Okay. And R-1, you still need to have some language ability though, correct?

A      Per the – yes, per the Dictionary of Occupational Titles.

Q      So then your testimony is obviously differing from the Dictionary of Occupational Titles with regards to the language

level?

      A     In that respect, yes. I also though incorporate that it's no talking or hearing that's required in these jobs.

      Q     But would they be able to read English for – to complete checklists or things of that nature?

      A     They may for the conveyor line bakery worker. I don't believe the scaling machine operator.

AR 757-58. The ALJ gave weight to the VE's consideration of Plaintiff's age, education, work experience, and RFC, including Plaintiff's illiteracy, and correctly found that the VE's testimony that Plaintiff is capable of certain level one language jobs does not conflict with the DOT. AR 731. However, based on the VE's testimony, this Court finds that Plaintiff's illiteracy does prevent her from meeting the particular requirements of a conveyor line bakery worker.

Nevertheless, the ALJ satisfied his burden and reasonably inferred from the context of the VE's testimony that Plaintiff was capable of working as a scaling machine operator, despite her illiteracy, because that job does not require her to read, talk, or hear in English. See Johnson, 2013 WL 3956248, at *12 (finding that the ALJ properly relied on the VE's testimony that plaintiff, who was illiterate, could perform the represented job, even though the DOT required a language level of one, because the VE testified that the small products assembler job does not require reading); see also Tamayo v. Colvin, No. 12-8484, 2013 WL 5651420, at * 2-3 (C.D. Cal. Oct. 11, 2013) (holding that the Commissioner's burden can be satisfied by showing the existence of only one job with a significant number of available positions that the claimant can perform). The job description for a scaling machine operator indicates that the worker tends machines that remove scales from fish by performing the following activities: "Turns valve to start spray of water over spiked rollers of scaling machine. Pushes buttons to start and stop conveyor that feeds fish from

holding tank into tray at feeding end of machine and to start scaling machine. Feeds fish onto conveyor that moves fish through spiked rollers that remove scales from sides of fish and that dumps fish into containers." DICOT § 521.684-386, available at 1991 WL 674194. Additionally, the VE testified that he relied on his knowledge and experience to address issues that are not isolated in the DOT.[1] AR 16-17. Therefore, the VE's testimony, knowledge, and experience, coupled with the job description, provides sufficient evidence to supplement the DOT and support the ALJ's finding that Plaintiff can work as a scaling machine operator.

**B.   Work Existing in Significant Numbers**

Plaintiff contends that the scaling machine operator position does not exist in significant numbers in the national or regional economy.[2] JS at 17-18.

An ALJ may properly rely on a VE's testimony regarding the number of relevant jobs, as agency regulations allow an ALJ to "take administrative notice of any reliable job information." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). No bright-line rule exists for what constitutes a significant number of jobs in the regional or national economy. Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012); Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 528 (9th Cir. 2014). However, courts have found as few as 125 regional jobs to be significant. See, e.g., Barker v. Sec'y of Health and Human Servs., 882 F.2d 1474, 1478-79 (9th Cir. 1989) (relying in part on a District of Arizona case

---

[1] The record shows that the VE holds a graduate degree in counseling and has been providing "counseling services to various disabled population and assisting them in all aspects of returning to suitable, gainful employment" for the past twenty-one years. AR 861-62.

[2] The Court does not evaluate if there is a significant number of conveyer line bakery worker positions in the national or regional economy because the Court has already determined that Plaintiff's language limitations may prevent her from performing the required tasks of that job.

which held that 30-40% of 500-600 relevant positions, or as little as 125 available positions, was a significant number); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (holding that 500 jobs in the regional economy was a significant number); Davis v. Colvin, No. 13-464, 2014 WL 358407, at *9 (C.D. Cal. Jan. 30, 2014) (finding that 490 regional jobs constituted a significant number).

Here, the VE testified that there were approximately 5,000 positions in the national economy and 500 positions in the regional economy for scaling machine operators. AR 753-54. The Commissioner need only demonstrate a significant number of either national or regional jobs. See Beltran, 700 F.3d at 389-90 ("If we find either of the two numbers 'significant,' then we must uphold the ALJ's decision."). Plaintiff relies on Beltran, in which the Ninth Circuit held that 135 positions in the Greater Metropolitan and Orange County area was not significant, to argue that 500 jobs cannot be deemed significant when the region encompasses the entire State of California. AR 12. However, Beltran does not compel a ruling for Plaintiff who has more than three and half times as many jobs available to her regionally than were available in Beltran. See Evans v. Colvin, No. 13-01500, 2014 WL 3845046, at *2 (C.D. Cal. Aug. 4, 1014) (holding that Beltran does not compel a ruling for plaintiff where plaintiff had roughly four times more jobs available to her than were available in Beltran). Furthermore, the Court finds no reason why Beltran is more applicable in this case than Barker. Id. at *3 (finding that Barker "gave the Ninth Circuit's tacit blessing to decisions holding that 600, 500, or even fewer regional jobs constituted a 'significant number'"). Accordingly, reversal is not warranted and Plaintiff is not entitled to relief.

///
///
///

7

## IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:  May 23, 2016

DOUGLAS F. McCORMICK
United States Magistrate Judge

8